IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROMAN J. HEIMERL,

           Plaintiff,

v.

ANDREW M. SAUL,

           Defendant.

OPINION AND ORDER

19-cv-175-wmc

Under to 42 U.S.C. § 405(g), plaintiff Roman Heimerl seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Plaintiff argues on appeal that Administrative Law Judge ("ALJ") Jeffry Gauthier failed to assign the appropriate weight to the various medical opinions in the record. The court held oral argument with the parties on February 27, 2020. For the reasons discussed below, the court will reverse and remand the ALJ's decision.

BACKGROUND[1]

Plaintiff Roman Heimerl filed an application for disability insurance benefits on February 16, 2015, claiming an onset date of August 18, 2014. Heimerl was 59 years old when he submitted his application. After his claim was denied initially and on reconsideration, Heimerl requested a hearing. On July 26, 2017, ALJ Gauthier conducted a hearing at which Heimerl and his counsel appeared in person, as did vocational expert Stephen P. Davis.

---

[1] These facts are drawn from the Administrative Record ("AR". (Dkt. #7.)

A.  **Medical Record**

Heimerl suffers from a number of medical impairments, the most severe of which is lower back pain caused by degenerative disc disease of the lumbar spine. (AR at 54.) Heimerl's hearing testimony and some treatment notes suggest his back pain was caused by a truck accident at his place of work on May 20, 2014. (*See, e.g.*, AR at 54-55, 363.) Other records, however, indicate that his back problems predated that accident; for example, an October 2012 CT scan had already revealed moderate degenerative changes to his lumbar spine. (AR at 415.)

Regardless of the origins of Heimerl's back problems, he was seen by Dr. David Brouillette, a chiropractor, on June 9, 2014. During that appointment, Heimerl rated his low back pain as a 7 out of 10, which was aggravated by sitting, getting up from a seated position, lifting, driving, and bending, tilting, and twisting at the waist. (AR at 363.) An examination of Heimerl revealed normal deep tendon reflexes and muscle strength, and while some orthopedic tests for the lumbar spine indicated low back pain, some were also negative. (AR at 374.) Following the examination, Brouillette diagnosed Heimerl with lumbar segmental dysfunction, pelvic segmental dysfunction, sacrococcygeal segmental dysfunction, and lumbar strain/sprain. (AR at 375.)

Dr. Brouillette treated Heimerl's ongoing low back pain throughout June and July of 2014. (AR at 379-94.) However, because Heimerl was not responding to the treatment, Brouillette referred him back to his medical doctor, Dr. Thomas Shewczyk. (AR at 394, 401.) On August 1, 2014, Brouillette also completed a "Medical Report on Industrial Injury," indicating that no permanent disability resulted from the truck accident and

Heimerl was no longer being treated by him given his lack of improvement. (AR at 369.)

Dr. Shewczyk then referred Heimerl for treatment by an orthopedic specialist, Dr. David Coran. (AR at 407, 410.) After examining Heimerl on October 9, 2014, Dr. Coran noted that Heimerl rated his low back pain at 7/10 at worst and 5/10 at best. (AR at 407.) Dr. Coran's physical examination of Heimerl revealed some normal strength and functioning, but also some range-of-motion limitations and signs of pain. (AR at 408.) After reviewing an X-Ray, Dr. Coran noted multilevel disk degenerative change, most significant in the lumbar region, and recommended an MRI, which was conducted on October 23, 2014. (AR at 408, 413.) The MRI further revealed broad-based disk bulging with facet hypertrophy with mild to moderate canal stenosis. (AR at 403.) Dr. Coran again met with Heimerl on October 30, 2014, at which point Heimerl reported that his pain level was around 5/10. (AR at 405-06.)

In Dr. Coran's October 30, 2014, treatment notes, he opined that Heimerl should have the following work restrictions: "restricted duty of 10-pound lifting, no climbing or overhead work, alternate sit or stand every 30 minutes as needed to relieve pain, no truck driving." (AR at 405-06.) Then in December 2014, Dr. Coran suggested the following permanent restrictions: "10 pounds lifting, no truck driving, no repetitive bending." (AR at 403.)

Dr. Coran also referred Heimerl to physical therapy, which he began on November 10, 2014. (AR at 419.) By that point, the physical therapist noted, Heimerl reported constant lower back pain that increased with "any extension as well as sitting greater than 1 hour." (AR at 419.) One month later, the physical therapist wrote: "ROM [range of

3

motion] is unchanged in excursion, but his motor control within the motion is much better, particularly with extension control returning from flexion. His pain rating remains a 6/10. Extension oriented prone press would increase hip symptoms." (AR at 418.) Ultimately, however, Heimerl did "not make significant progress" and physical therapy was discontinued. (AR at 418.)

Heimerl was again seen by Dr. Coran on December 11, 2014, who noted that Heimerl continued to experience 7/10 lower back pain, which had not improved with physical therapy. (AR at 403.) Dr. Coran also wrote:

> I still feel that epidurals would be helpful. The patient does not want to proceed with injections. I explained to the patient that if he does not want further treatment such as epidural injections that he is at an end of healing for his condition. At this point, it is unlikely he will improve.

(AR at 403.)

On February 17, 2015, Dr. Richard Karr completed an "Independent Medical Examination" of Heimerl. (AR at 655-63.) This examination was completed for the purpose of determining whether Heimerl qualified for Wisconsin worker's compensation, and thus focused on whether Heimerl's back pain was caused by the May 2014 accident. (AR at 655-63.) This examination included both a review of Heimerl's medical records and a physical examination. (AR at 655-63.) Ultimately, Dr. Karr concluded that Heimerl "likely has multilevel lumbar spondylosis . . . with secondary stenosis." (AR at 660.)

Dr. Karr's February 2015 examination noted the following "optional restrictions necessitated" by Heimerl's impairments that could be "implemented and rescinded at Mr. Heimerl's discretion":

4

> Maximum lifting 40 pounds; maximum repetitive lifting/carrying 20 pounds; avoid unprotected heights; avoid repetitive or prolonged bending at the waist beyond 45 degrees; latitude to change from sitting to standing and vice versa on an as-needed basis; full-time work status; no driving restrictions.

(AR at 662.)

Also in February of 2015, Dr. Coran completed a workers' compensation worksheet. (AR at 600-03.) In this worksheet, Coran restricted Heimerl to lifting/carrying 10 pounds occasionally, standing/walking for 0-2 hours at one time and 4 hours total in a day, sitting for 0-2 hours at one time and 2-4 hours total during a day, occasionally bending, squatting, and reaching, never kneeling or climbing. (AR at 602.)

On July 30, 2015, a disability report was completed by Dr. Kurt Reintjes. (AR at 595.) In it, Dr. Reintjes noted that Heimerl reported his lower back pain as "constant" and "generally 5 out of 10 on a 1 to 10 scale," which is exacerbated by reaching overhead. (AR at 595.) The report also noted that Heimerl reported "taking Advil." (AR at 595.) Dr. Reintjes conducted a "lumbrosacral spinal examination," which showed generally normal results, except some tenderness at the right lower back without guarding and "[s]ide-to-side flexion was 10 degrees bilaterally" and "[f]lexion 45 degrees and extension 20 degrees." (AR at 597.) Dr. Reintjes additionally opined:

> [Heimerl] reports lumbago. There is some evidence radiologically from an MRI in October 2014 that there is degenerative changes with very moderate canal stenosis noted, which very well could be associated with a lower back pain that he describes; however, appear to be in no acute distress during this examination.

(AR at 597.)

5

Two state agency consultants also provided medical opinions as to Heimerl's functional limitations. Dr. Syd Foster opined that Heimerl was capable of performing medium exertional work beginning from July 30, 2015, although recognized that he was limited to light work from the alleged onset date to July 29, 2015. (AR at 23.) Similarly, in December 2015, Dr. Pat Chan opined that Heimerl could perform medium work, with overhead reaching limitations to account for Heimerl's shoulder impairment. (AR at 23.)

After December 2014, other than the medical function examinations discussed above in February and July of 2015, the only record of medical treatment sought or received by Heimerl was in April and May of 2017. (AR at 22, 63-65, 638.) Specifically, treatment notes from Dr. Shewczyk show that as of April 17, 2017, Heimerl's "back still hurts all the time." (AR at 638.) And on May 1, 2017, Dr. Shewczyk noted that Heimerl's "back pain causes [patient] to not sleep" with "back pain rated at 6-7." (AR at 638.) Shewczyk additionally observed that Heimerl was "cleared to return to work . . . by Dr. Coran." (AR at 638.)[2]

As his regular physician, Dr. Shewczyk completed a last functional report for Heimerl on June 28, 2017. (AR at 645-48.) In that report, Shewczyk opined that Heimerl:

---

[2] In addition to his back, the medical record contains some indications of other impairments. In April of 2013, Heimerl was diagnosed with degenerative acromioclavicular ("AC") joint changes in his left shoulder. (AR at 332.) Dr. Reintjes's examination also revealed moderate degenerative changes at the AC joint. (AR at 596.) Additionally, a 2012 treatment record from Dr. Shewczyk notes testicular pain (AR at 505) and a scrotal ultrasound was performed in October of 2012, due to Heimerl's reports of pain in that area (AR at 417). No local abnormalities were found by the scan, although the record indicates "some fullness of the soft tissues of the scrotum." (AR at 417.) During his October 9, 2014, appointment with Dr. Coran, the notes indicate that Heimerl had a "history of scrotal pain," but did not suggest that he was currently experiencing those symptoms. (AR at 407.)

- had chronic lower back pain that was expected to last at least twelve months;

- could walk for one block without rest or severe pain;

- could sit for two hours and stand for two hours at one time before needing to adjust position;

- could sit for less than two hours and stand/walk for less than two hours in a total eight hour working day;

- needed a job that permitted shifting positions at will;

- could lift less than 10 pounds frequently; [and]

- could only occasionally twist, stoop, crouch/squat, climb ladders, and climb stairs.

(AR at 645-48.)

### B. Hearing

At the July 26, 2017, hearing, ALJ Gauthier posed a number of questions to Heimerl regarding his claimed disability and medical history. In particular, the ALJ asked Heimerl about his decision not to undergo surgery or epidural injections to treat his back condition:

> Q . . . You didn't have surgery.
> A No, I didn't.
> Q Okay. Did he say that you could have surgery to fix it?
> A Yeah. It was an option.
> A Okay, so why would it -- why did you not take it?
> A I didn't know my insurance could -- I didn't have no insurance at the time and I didn't have no money --
> Q Okay. Well, when did you get insurance?
> A When I got -- I believe it's maybe a year or so ago, I went on Badger Care.
> Q Okay. Prior to that, you were on insurance in 2014, through your employer. Right?
> A Yeah.
> . . .
> Q . . . And did you have injections?
> A No. I went to have them done several months and that there because I asked the doctor for it.

7

> . . .
> Q Okay. So -- but now you have insurance and you've had insurance for a year and a half, at least . . . . [W]hy did you not have the surgery, once you got the insurance?
> A I tried to go and have the injection done and they refused the Obamacare. . . . They want me -- I got to go for therapy again.
> Q Okay. Because time had passed and so the order, in which coverage happens, is first, you have to participate in physical therapy. Then they will approve you to get an injection.

(AR at 62-65.)

Later in the hearing, the ALJ again asked about Heimerl's decision to forego epidural injections:

> Q In 2014, Dr. [C]oran offered you injections, while you were still treating with him and you still had insurance and you refused. Why did you refuse?
> A I was scared.
> Q Okay. What were you scared of?
> A Being disabled. . . . I didn't want to be an accident on the table and that there would become -- not being to move.
> . . .
> Q Okay. Well, did the doctor indicate that that might be a possible outcome?
> A No, he never said.

(AR at 82.)

### C. ALJ Decision

On February 20, 2018, ALJ Gauthier issued a written opinion in which he considered whether Heimerl was disabled using the five-step sequential framework set forth in the regulations. *See* 20 C.F.R. § 404.1520. As for the initial three steps, the ALJ found that Heimerl was not engaged in substantial gainful activity and had severe medical impairments, which did not meet or medically equal one of the impairments listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. (AR at 16-19.)

The ALJ then considered Heimerl's residual functional capacity ("RFC"). (AR at 19.) In his analysis, the ALJ discussed the opinions of various medical doctors in the record. (AR at 23-24.) First, the ALJ accorded both opinions "great weight" to the opinions of the two state agency medical consultants -- Drs. Foster and Chan -- despite their only reviewing the paper record. (AR at 23.) Second, he gave the opinions by Drs. Reintjes and Karr "partial weight," despite their having both conducted physical examinations of Heimerl. Finally, the ALJ gave "little weight" to the opinions of treating physicians, Drs. Shewczyk and Coran. (AR at 24.) Ultimately, the ALJ concluded that Heimerl could "perform medium work as defined in 20 C.F.R. 404.1567(c)" with the following limitations: "He can occasionally reach overhead with his left upper extremity. He can never climb ladders, ropes, or scaffolds." (AR at 19-20.)[3]

After hearing testimony from vocational expert Davis, the ALJ found at step five that Heimerl could not perform any past relevant work, but that given Heimerl's RFC and other factors, he could perform jobs such as hand packager, floor waxer, and linen clerk. (AR at 26.) Because these jobs existed in sufficient numbers in the national economy, the ALJ concluded that Heimerl was not disabled within the meaning of the Social Security Act. (AR at 27.)

---

[3] The regulations provide that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

9

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Edwards*, 985 F.2d at 336. If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 2006).

On appeal, plaintiff challenges the weight the ALJ assigned to the various medical opinions in this record. An ALJ is required to evaluate every medical opinion in the record,

20 C.F.R. § 404.1527(c), and "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p. In general, opinions from medical sources who have regularly treated the claimant are entitled to more weight than non-treating sources. 20 C.F.R. § 404.1527(c), SSR 96-2p.

As plaintiff points out, by giving "little weight" to the opinions of Heimerl's treating physicians, Drs. Shewczyk and Coran, and "great weight" to the opinions of state agency consultants Drs. Syd Foster and Pat Chan, the ALJ effectively turned "the treating physician rule on its head by giving more weight to the opinions that, by law, are to receive the least consideration and in giving no weight to the treating source statements, citing minimal findings in support of his conclusions on weight." (Pl.'s Br. (ckt. #10) 7-8.) As a result, plaintiff contends that the ALJ's treatment of the opinion evidence led him to erroneously conclude that Heimerl could engage in medium exertional work, and that a proper analysis would have led him to a limitation of light work. (*Id.*)[4]

This conclusion is particularly significant in this case, because the rules would have

---

[4] The regulations provide that medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," while light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567.

compelled a finding of disability given his age and previous job were Heimerl limited to light work. Specifically, Grid Rule 202.01 provides that an individual of "advanced age" (those age 55 and older) who "can no longer perform vocationally relevant past work and who ha[s] a history of unskilled work experience" is disabled within the meaning of the Social Security Act if limited to light work. Since Heimerl was 59 years old at the alleged onset date and his past relevant work required medium exertional levels, an RFC limiting him to light work would preclude him from his past relevant work and would result in a finding of disability under Grid Rule 202.01. Finally, as plaintiff points out, there is no dispute that Drs. Shewczyk and Coran qualify as "treating physicians" under the regulations, and they *both* opined that Heimerl should be limited to lifting only 10 pounds frequently. Again, if accepted, that opinion would limit Heimerl to light work and mean he is disabled.

In his written opinion, the ALJ gave the following reasons for discounting Dr. Shewczyk's opinions:

> These opinions are inconsistent with the objective evidence, including Dr. Shewc[z]yk's own records (Ex. 10F/2). Rather, they appear to be based on the claimant's subjective reports to the doctor and not on the doctor's clinical findings during his intermittent examinations. The objective evidence, including clinical findings (*e.g.*, unremarkable gait, strength, bulk, tone, reflexes and straight leg raise findings) with minimal treatment after 2014, is more consistent with the residual functional capacity detailed herein (Ex. 11F/10).

(AR at 24.) Similarly, the ALJ gave the following reasons for discounting Dr. Coran's opinions:

> First, these limitations represent a short timeframe during the relevant period, during which Dr. Coran examined the

12

> claimant. . . . [T]hese opinions are not consistent with the evidence as a whole, including the evidence after February 2015 showing the claimant's physical functioning improved, he treated his symptoms with over the counter medications, and he was able to perform a range of daily activity. Second, the State Agency medical consultants noted Dr. Coran's opinions but discarded them because they relied heavily on the claimant's subjective reports of symptoms, and not the clinical findings of Dr. Coran or other medical providers. Further, as Dr. Coran noted, he only restricted the claimant during that period because the claimant chose not to pursue further treatment like epidurals (Ex. 3F/2).

(AR at 24.)

As an initial matter, the rules that govern plaintiff's claim provide that a treating source's medical opinion is entitled to "controlling weight" if, and only if, it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case." § 404.1527(c).[5] A court must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 Fed. Appx. 738, 740 (7th Cir. 2010)).

Applying this standard of review, the ALJ did not err in declining to give "controlling weight" to Drs. Shewczyk's and Coran's opinions. First, the ALJ found that Drs. Shewczyk's and Coran's opinions were based more on Heimerl's subjective complaints

---

[5] Three years ago, the Social Security Administration modified this rule to eliminate the "controlling weight" instruction. *See* 82 Fed. Reg. 5867-68 ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. Plaintiff's application in this case was filed on February 16, 2015. Accordingly, the ALJ was required to apply the treating physician rule when deciding plaintiff's application.

13

than on objective clinical and laboratory techniques. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("[W]here a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it."). Second, the ALJ cited to evidence that indicated better physical functioning than those suggested by the treating physician's opinions. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (ALJ did not err in declining to give treating physician opinion controlling weight where ALJ pointed to evidence suggesting plaintiff had greater physical ability than that indicated in the treating physician's opinion). Because these reasons were not "patently erroneous," the ALJ provided an adequate explanation declining to give the opinions controlling weight. Moreover, although plaintiff argued in briefing that Drs. Shewczyk's and Coran's opinions should have been assigned controlling weight, he largely abandoned this position at oral argument.

Still, "[a] finding that a treating source's medical opinion is not entitled to *controlling weight* does not mean that the opinion is rejected," the opinion "may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p (emphasis added). In particular, non-controlling opinions by treating sources, as well as other medical opinions must be evaluated based on the length, frequency, nature and extent of the treatment relationship, the source's area of specialty, the degree to which the opinion is supported by relevant evidence, and the degree to which the opinion consistent with the record as a whole. § 404.1527(c). While an ALJ need only "minimally articulate" his reasons for assigning a particular weight to a medical opinion, *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008), he must still offer "good reasons" for discounting the medical opinion of a

14

treating physician. § 404.1527(c)(2).

Despite the deferential standard accorded to the Commissioner on appeal, the court agrees with plaintiff that the ALJ failed to offer "good reasons" for his decision to afford "little weight" to the opinions of Heimerl's treating physicians, "partial weight" to the opinions of Drs. Reintjes and Karr, and "great weight" to the opinions of the state agency consultants. (AR at 23-24.) With respect to the first three regulatory factors -- the length, frequency, and nature/extent of the treatment relationship -- *all* favor giving greater weight to the treating physicians than the other opinions. Dr. Shewczyk treated Heimerl intermittently between 2012 and 2017 (*see* AR at 645) and Dr. Coran treated Heimerl between October and December 2014 and again completed an assessment for Heimerl in February of 2015 (AR at 403-18, 600-03). In contrast, Drs. Karr and Reintjes only examined Heimerl *once* for the purpose of completing, respectively, a workers' compensation report and a disability report, and the state agency physicians *never* examined Heimerl.

As for the fourth factor -- the source's area of specialty -- Dr. Coran was an "orthopedic spine surgeon" (AR at 403) and Dr. Karr specialized in orthopedic surgery/spine surgery (AR at 663), while the record indicates *no* specialty for any of the other doctors who provided opinion evidence. (*See* AR at 131 (Dr. Chan listed simply as "M.D."); 120 (Dr. Foster listed simply as "D.O."); 638 (Dr. Shewczyk listed simply as "M.D."); 597 (Dr. Reintjes listed simply at "M.D., MHS [Master of Health Science]").) Yet the ALJ failed entirely to address the physicians' qualifications in his opinion, and never mentioned either Dr. Coran's or Dr. Karr's area of specialty. Arguably at least, this

15

failure alone would constitute reversible error as the ALJ is required to consider "all" of the factors in deciding what weight to accord to a medical opinion. § 404.1527(c).

As for the fifth "supportability" factor, the ALJ explained that he discounted both treating physicians' opinions because they relied on Heimerl's subjective reports and not on objective clinical findings. (AR at 24.) While the Seventh Circuit has said that an ALJ may discount a treating physician's opinion if "based solely on the patient's subjective complaints," *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008), the ALJ here failed even to acknowledge that both treating physicians also relied on objective clinical findings. To begin, Dr. Coran actually (1) ordered and examined an X-Ray and an MRI and (2) observed Heimerl's physical performance on various diagnostic tests. (AR at 403-19.) Further, in the form in which Dr. Shewczyk expressed his opinion regarding Heimerl's limitations, he noted that the "MRI shows canal stenosis," (AR at 625), a fact which the ALJ also failed to mention. To be sure, both doctors *also* noted Heimerl's subjective reports of pain, but the medical records actually contradict the ALJ's conclusion that Drs. Coran and Shewczyk did "not" rely on clinical findings, nor did the ALJ explain in his opinion how he reached that conclusion. (AR at 24.) Moreover, the clinical findings *did* show lower back abnormalities that both physicians found were consistent with Heimerl's subjective reports. By failing to address any of these objective findings the ALJ obviously failed to "build an accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

The sixth and final factor -- consistency -- is where the ALJ appears to have placed the greatest emphasis in assigning weight to the various opinions, but again failed to offer

good reasons for finding Drs. Shewczyk's and Coran's opinions inconsistent with the evidence. For example, one of the reasons offered by the ALJ for finding Drs. Shewczyk's and Coran's opinions inconsistent with the record was that Heimerl received "minimal treatment after 2014" and decided "not to pursue further treatment like epidurals." (AR at 24.) Under the regulations, an individual's alleged limitations may be found to be inconsistent with the evidence of record where "the frequency or extent of the treatment sought by an individual is not comparable with" the individual's complaints, but such a finding may not be made "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p. Here, Heimerl's hearing testimony -- while admittedly less than clear -- suggests that: (1) he did not want epidural injections out of a fear of becoming paralyzed; and (2) he did not seek certain treatments after 2014 because he was uninsured from 2015 until 2016. (AR at 62-65, 82.) Additionally, he *did* seek to have epidural injections sometime in 2016 after he got on BadgerCare, but was refused coverage. (AR at 62-65 ("I tried to go and have the injection done and they refused the Obamacare.").) Even if Heimerl's testimony indicated a certain complacency regarding his health care and treatment, it was error for the ALJ to discount the treating doctor's opinions as "inconsistent" on the basis of Heimerl's lack of treatment without at least addressing Heimerl's explanation as to why he did not receive epidural treatments.

The ALJ also cited to Dr. Karr's February 2015 conclusion that Heimerl exhibited an "unremarkable gait, strength, bulk, tone, reflexes and SLR findings" to support his conclusion that medical evidence on record was inconsistent with Drs. Shewczyk's and

Coran's opinions. (*See* AR at 24 (citing exhibit 11F, AR at 659).) While this accurately quotes Dr. Karr, the ALJ chose to ignore that Karr further opined that Heimerl had an "optional restriction" of "maximum lifting 40 pounds; maximum repetitive lifting/carrying 20 pounds." (AR at 659-60.) Indeed, the ALJ did not even recognize the *consistency* between Karr's conclusion and Drs. Shewczyk's and Coran's opinions that Heimerl should be restricted to light work. (AR at 24.) To be sure, Dr. Karr's recommendation was only "optional," and an RFC is to be based on a finding regarding "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). However, "[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010). *See also Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (remand granted in part because the "the ALJ overlooked the extent to which the treating source's opinions were consistent with the diagnoses and opinions of other medical sources"). That is exactly what ALJ Gauthier did here, apparently because Dr. Karr's recommended lifting/carrying restriction would have supported authorizing light work only, just as had the treating physicians' restrictions.

Yet another reason cited by the ALJ to support his conclusion that Drs. Shewczyk's and Coran's opinions were inconsistent with other record evidence is his finding that the evidence after February 2015 showed Heimerl's physical functioning improved. (AR at 24.) To support this, the ALJ appears to rely on Dr. Reintjes' evaluation and the opinion of state agency consultant Dr. Foster, who in turn cites only to Dr. Reintjes' notes. (AR at 23-24, 114.) Even if the ALJ were correct in his conclusion that Dr. Reintjes' June 2015

18

evaluation suggested improved functioning, however, the ALJ failed to discuss *later* evidence proposed by Heimerl's treating physician, Dr. Shewczyk, that runs counter to the ALJ's narrative. Specifically, in treatment notes from April and May of 20*17*, Dr. Shewczyk wrote that Heimerl's "back still hurts all the time," that his "back pain causes [Heimerl] to not sleep," and that he rated his back pain at 6-7 out of 10 -- the same rating that Heimerl consistently gave his back pain in 2014. (AR at 638.) *And* in June of 2017, Dr. Shewczyk opined, among other things, that Heimerl was limited to lifting less than 10 pounds frequently. (AR at 645-48.) Although an ALJ is not required to address every piece of evidence on the record, an ALJ may not ignore an entire line of evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Accordingly, the ALJ again erred in concluding that Heimerl's physical functioning improved after February 2015 without at least *discussing* Dr. Shewcyzk's 2017 treatment notes and evaluation to the contrary.

Finally, considering the ALJ's treatment of the medical opinions as a whole, he primarily noted inconsistencies *between* the opinions of the six doctors, but wholly failed to explain *why*, in the face of these inconsistencies, the state agency consultants' opinions should be accorded the most weight, with the opinions of the examining physicians coming in second, and the treating physicians last. Not only did this run counter to the general rule that opinions from medical sources who have treated the claimant are entitled to more weight than non-treating sources, § 404.1527(c), SSR 96-2p, but as discussed above, most, if not all, of the other regulatory factors would appear to strongly favor according more weight to the two treating physicians over the other four, and at minimum resolving inconsistencies in favor of treating and examining physicians' opinions over two state

19

agency physicians who had only medical records to review in forming their opinions. *Cf. Gudgel v. Barnhart*, 345 F.3d 467 (7th Cir. 2003) (ALJ cannot reject an opinion by a treating physician based solely on a contrary opinion from a non-examining physician). At the very least, the ALJ was remiss not to include a more thorough explanation for according weight to the medical opinions in the manner that he did.

For all these reasons, the ALJ's treatment of the medical opinions is not supported by substantial evidence, and remand is required. Accordingly,

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Roman Heimerl's application for disability benefits and supplemental security income is REVERSED and REMANDED for further proceedings consistent with this opinion.

Entered this 23rd day of March, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge